**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 12-cv-01989-CMA-KLM

SHARON MURRAY,

      Plaintiff,

v.

HOLYOKE SCHOOL DISTRICT RE-1J,
HOLYOKE SCHOOL BOARD, and
HOLYOKE HIGH SCHOOL,

      Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

This matter comes before the Court on Defendants' Motion for Summary Judgment.  (Doc. # 38.)  For the following reasons, the Court grants the motion.

## I.  BACKGROUND

The following facts are undisputed.  Plaintiff Sharon Murray worked for many years for the Holyoke School District in various positions.  (Doc. # 43, ¶ 2.)  She was born in 1959, and during the timeframe relevant to her cause of action, was between 50 and 52 years old.  (Doc. ## 38, ¶ 1; 43, ¶ 1.)  Plaintiff was the school district's Athletic Director for the 2008-2009 and 2009-2010 school years.  (Doc. ## 38, ¶ 4; 43, ¶ 2.)  In 2009, Brent Miles became superintendent for the school district.  (Doc. ## 38, ¶ 6; 43, ¶ 3.)  In 2010, Superintendent Miles replaced Plaintiff with Ms. Bennett, who was

"slightly younger" than her, as Athletic Director.  (Doc. ## 38, ¶ 9; 43, ¶ 4.)  From 2010[1]

into 2011, Plaintiff complained to school officials, including Junior/Senior High School

Principal Ortner and school board members, about her removal from the Athletic

Director position.  (Doc. # 43, ¶ 5.)  On or about August 20, 2010[2], Principal Ortner gave

Plaintiff a written reprimand for deleting athletic files, taking leave for the entire month of

July 2010, refusing to deal with athletic paperwork, money, or questions, and failing to

attend staff meetings or clock in and out of her computer.  (Doc. ## 38, ¶ 15; 43, ¶ 21.)

During the 2010-2011 school year, Plaintiff was a secretary in the junior/senior

high school building.  (Doc. # 38, ¶ 10.)  Ms. Tammie Timm, 38 years old for all times

relevant to this case, was also a secretary in the same building, a position she had held

since 2006.  (Doc. ## 38, ¶ 12; 43, ¶ 8.)  From November 2008, through the end of the

2010-2011 school year, Ms. Brenda Krueger and her sister, Tammy Kroeger, were

secretaries in the elementary school building.  (Doc. # 38, ¶¶ 13, 14.)  The school

district decided to reduce the number of school secretaries from two to one in each

building for the 2011-2012 school year.  (*Id.*, ¶ 16.)  Superintendent Miles, on advice

from Principal Ortner, decided to retain Ms. Timm as secretary in the junior/senior high

school building, thereby displacing Plaintiff from her position.  (Doc. ## 38, ¶ 14; 43,

---

[1] In their reply, Defendants admit paragraph 5 of Plaintiff's statement of undisputed facts, which says that she complained about the termination of her position in 2010 (Doc. # 49 at 1), but later, Defendants dispute that Plaintiff made such complaints in 2010 (*Id.* at 4).  Although Plaintiff's deposition testimony is somewhat ambiguous, for purposes of this Order, the Court accepts as true Plaintiff's allegation that she complained of age discrimination in 2010.

[2] Plaintiff's statement of undisputed facts and response to Defendants' motion mistakenly states that the written reprimand was given in August of 2011, rather than 2010.  However, the letter is dated August 20, 2010.  (Doc. # 38-13 at 1.)  And record evidence confirms that date.  *See* (Doc. ## 43-4 at 2 (Ortner's deposition); 39-19 (Plaintiff's charge of discrimination)).

¶ 11.)  Ms. Krueger, 43 years old for all times relevant, agreed to let her sister,

Ms. Kroeger, remain as secretary in the elementary school.  (Doc. # 38, ¶ 2, 18.)

    As a result, neither Ms. Krueger nor Plaintiff had employment positions with

the District for the upcoming school year.  However, Superintendent Miles opened

a position of administrative assistant to the Superintendent and Board of Education and

considered the two displaced secretaries for the position.  (Doc. # 38, ¶ 19.)  Plaintiff

applied and interviewed for the position, but was not selected.  Instead, the school

district offered the position to Ms. Krueger.  (Doc. ## 38, ¶ 20; 43, ¶ 14.)  In making his

recommendation, Superintendent Miles considered his interviews with each candidate

and their references, which were relayed from other district employees on a document

that he created specifically for this selection process.  Both candidates selected district

employees to serve as references.  However, for reasons not clear to this Court,

apparently Ms. Krueger had several days to get references, whereas Plaintiff had only

a few hours.  In addition, Superintendent Miles obtained references for each candidate

from other employees.  (Doc. # 43, ¶ 16.)  Superintendent Miles explained that he

recommended the district hire Ms. Krueger because she answered interview questions

better than Plaintiff, had better references, and because of her helpfulness and humor.

(Doc. ## 43, ¶ 18; 49 at 3.)  On May 27, 2011, Plaintiff's employment was terminated.

(Doc. # 43, ¶ 21.)

    On May 5, 2011, Plaintiff filed a formal complaint of discrimination with the

district.  On May 10th and 25th of 2011, Plaintiff's attorney also sent two complaints of

age discrimination to school officials.  (Doc. # 43, ¶ 25.)  On or about October 4, 2011,

Plaintiff filed a charge of discrimination with the EEOC.  (Doc. # 43, ¶ 22.)

     In November of 2011, Ms. Timm resigned from her position as secretary for the

junior/senior high school.  Plaintiff applied for the position.  Ms. Ortner corresponded

with Plaintiff via email to set up an interview, but Plaintiff was out of town during that

time.  Ms. Ortner informed Plaintiff she had a deadline to complete the interview

process.  Plaintiff did not respond.  (Doc. # 43, ¶ 19, 20; 49 at 3.)  Ms. Thompson,

who is younger than Plaintiff, was hired for the position.  (Doc. # 43, ¶ 19.)

## II.  <u>STANDARD OF REVIEW</u>

### A.  SUMMARY JUDGMENT STANDARD

     The purpose of a summary judgment motion is to assess whether trial is

necessary.  *See Celotex Corp. v. Catrett*, 477 U.S 317, 323 (1986).  Federal Rule

of Civil Procedure 56(c) provides that summary judgment shall be granted if "the

pleadings, the discovery and disclosure of materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled

to judgment as a matter of law."

     A fact is "material" if it pertains to an element of a claim or defense; a factual

dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a

reasonable jury could return a verdict for either party.  *See Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  However, the nonmoving party "must do more than

simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "The mere

existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). After the movant has met its initial burden, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of the claim such that a reasonable jury could find in its favor. *See Anderson*, 477 U.S. at 248.

The nonmovant must go beyond the allegations and denials of her pleadings and provide admissible evidence, which the Court views in the light most favorable to the nonmovant. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Although the nonmoving party need not present evidence "in a form that would be admissible at trial," *Celotex*, 477 U.S. at 324, "the content or substance of the evidence must be admissible." *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995). However, conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F .3d 869, 875 (10th Cir. 2004). Furthermore, "[h]earsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because 'a third party's description of a witness' supposed testimony is not suitable grist for the summary judgment mill.'" *Adams v. Am. Guarantee and Liab. Ins. Co.*, 233 F.3d 1242,

1246 (10th Cir. 2000) (quoting *Wright-Simmons v. City of Oklahoma City*, 155 F.3d
1264, 1268 (10th Cir. 1998)).

**B.   *MCDONNELL DOUGLAS* BURDEN-SHIFTING FRAMEWORK**

Plaintiff brings her claims pursuant to the Age Discrimination in Employment Act
("ADEA").  The ADEA was passed "to promote employment of older persons based on
their ability rather than age" and "to prohibit arbitrary age discrimination in employment."
29 U.S.C. § 621(b).  The ADEA, in part, prohibits an employer from "fail[ing] or refus[ing]
to hire or to discharge any individual or otherwise discriminate against any individual
with respect to his compensation, terms, conditions, or privileges of employment,
because of such individual's age."  29 U.S.C. § 623(a)(1).

Where, as here, an employee's age discrimination claim relies exclusively on
circumstantial, rather than direct, evidence, the Court applies the burden-shifting
scheme of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04 (1973).  *See
Garrison v. Gambro, Inc.,* 428 F.3d 933, 936–37 (10th Cir. 2005) (invoking the
*McDonnell Douglas* scheme where the plaintiff asserted an ADEA age discrimination
claim).  That framework first allocates the burden of production to the employee to
establish a prima facie case of discrimination.  *McDonnell Douglas,* 411 U.S. at 802.
If the employee is successful in doing so, the burden of production shifts to the
employer to articulate a legitimate, nondiscriminatory reason for the adverse
employment action.  *Id.*  The employer's articulation of a legitimate, nondiscriminatory
reason for the adverse employment action causes the presumption of discrimination
attendant to the prima facie showing of discrimination "to simply drop[ ] out of the

6

picture." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993).  The employee then

has the full burden to show that the employer discriminated on the basis of sex or age.

*Bryant v. Farmers Ins. Exch.,* 432 F.3d 1114, 1125 (10th Cir. 2005).  "The [employee]

may do so by . . . showing that the proffered reason is a pretext for illegal discrimination

. . . ." *Ingels v. Thiokol Corp.,* 42 F.3d 616, 621 (10th Cir. 1994), *abrogated on other*

*grounds by Martinez v. Potter,* 347 F.3d 1208, 1210 (10th Cir. 2003).

## III. <u>DISCUSSION</u>

### A.    DISCRIMINATION CLAIMS

Plaintiff brings claims under the ADEA for the following conduct: (1) Defendants'

decision to retain Ms. Timm as secretary for the junior/senior high school building,

thereby, eliminating Plaintiff's position; and (2) Defendants' decision to hire Ms. Krueger

rather than Plaintiff for the administrative assistant position.[3]

In *McDonnell Douglas,* the Supreme Court enumerated the elements required in

order for a plaintiff to establish a prima facie case in the failure to retain and failure to

hire contexts.  These are: (1) plaintiff belongs to a protected class; (2) plaintiff "applied

and was qualified for a job for which the employer was seeking applicants"; (3) despite

---

[3] Because Plaintiff has clarified that she is not bringing separate claims of discrimination for her removal as Athletic Director or the 2010 reprimand (Doc. ## 43 at 11 n. 3; 50 at 2), the Court need not address Defendants' arguments that those claims are untimely.  Similarly, Plaintiff clarified that she "is not basing her discrimination charge" on Defendants' alleged failure to consider her for the opening created by Ms. Timm's resignation.  Moreover, Plaintiff failed to include an allegation of retaliation on this basis in the Final Pretrial Order.  *See* (Doc. # 55 at 3-4); *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (claims not included in final pretrial order are waived).  Therefore, these claims are waived and the Court need not determine whether she failed to exhaust administrative remedies related to these allegations.  Rather, the Court considers these facts only to the extent that they provide background information relevant to Plaintiff's claims of discrimination.

being qualified, the plaintiff was rejected; and (4) after plaintiff's rejection, "the position

remained open and the employer continued to seek applicants from persons of

[plaintiff's] qualifications." *McDonnell Douglas,* 411 U.S. at 802.[4]  The fourth prong only

requires that the plaintiff show that his or her job was not eliminated after the discharge.

*Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000).

However, where a plaintiff is laid off and cannot prove the position remained open,

courts have modified the fourth element by requiring plaintiff to produce direct or

circumstantial evidence from which a fact finder might reasonably find an intent to

discriminate.  *Branson v. Price River Coal Co.,* 853 F.2d 768, 771 (10th Cir.

1988) (citation omitted).

      Defendants concede that Plaintiff has alleged sufficient facts to establish a prima

facie case of discrimination related to their failure to retain her as a junior/high school

building secretary and to hire her as an administrative assistant.[5]  *See id.* ("Evidence

---

[4] Similarly, to establish a prima facie case that her termination was discriminatory a plaintiff must demonstrate: "(1) [s]he was a member of a protected class; (2) [s]he was qualified and satisfactorily performing [her] job; and (3) [s]he was terminated under circumstances giving rise to an inference of discrimination." *Barlow v. C.R. England, Inc.,* 703 F.3d 497, 505 (10th Cir. 2012) (quoting *Salguero v. City of Clovis,* 366 F.3d 1168, 1175 (10th Cir.2004)).  The Court notes, however, that neither party articulates the appropriate standard under which to review Plaintiff's claims for discrimination.  Defendants cite the three-prong inquiry that is applied to retaliation or disparate impact claims.  Yet, it does not appear that Plaintiff brings a disparate impact claim and her retaliation claim warrants a separate inquiry.  Plaintiff fails to cite any case law regarding the appropriate inquiry, providing only a smattering of facts and cases from which the Court must infer the application to each prong.  Plaintiff's failure to establish a prima facie case of discrimination would be sufficient to grant summary judgment.  *See id.*  However, because Defendants appear to concede that Plaintiff articulates a prima facie case on her claims that Defendants discriminatorily retained Ms. Timm and hired Ms. Krueger, the Court will address the other steps of the *McDonnell Douglas* framework out of an abundance of caution.

[5] Plaintiff devotes a section of her response to outlining disputes of fact regarding whether Defendants treated her differently in the terms of conditions of employment.  As written, it is

that an employer fired qualified older employees but retained younger ones in similar

positions is sufficient to create a rebuttable presumption of discriminatory intent and to

require the employer to articulate reasons for its decision.")   At this stage, Defendants

are required to articulate a legitimate, nondiscriminatory reason for their employment

actions.  *Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1216 (10th Cir. 2002).

Defendants assert they had legitimate business reasons for eliminating Plaintiff's

position as a junior/high school building secretary, including a budgetary shortfall for the

2011-2012 school year and the need to prioritize budget cuts that did not impact the

classroom.  Although Plaintiff does not dispute that there were budgetary concerns, she

asserts that the elimination of positions was "simply a ruse to eliminate [Plaintiff's]

position."  (Doc. # 43 at 13.)  Specifically, Plaintiff states that "at the same time that

Miles was eliminating secretarial positions, he was increasing positions within his office

and giving out two sets of bonuses [to all school employees]."  (*Id.* at 13 n. 4.)

However, Plaintiff herself told Superintendent Miles that there was not enough work

in the junior/high school building for two secretaries.  *See* (Doc. # 49-3 at 2).

Superintendent Miles explained that the changes in his office staff were needed due

to the heavy workload of the superintendent's office.  *See* (Doc. # 43-1 at 16-17).

Plaintiff's assertion that Defendants should have nonetheless retained her in the

---

unclear whether Plaintiff believes this is a standalone claim.  Typically, facts showing a plaintiff
is treated less favorably than others not in the protected class is one element of a prima facie
case, *see Jones v. Okla. City Sch. Bd.*, 617 F.3d 1273, 1279 (10th Cir. 2010), or used to
establish pretext, *see Kendrick*, 220 F.3d at 1227.  Plaintiff provides no case law to explain
how these allegations fit overall into her claims.  Because Defendants have conceded that
Plaintiff established a prima facie case, the Court will generally address these claims as they
relate to Plaintiff's burden to demonstrate pretext under the *McDonnell Douglas* framework.

remaining junior/high school building is insufficient to create a genuine issue of fact

regarding this legitimate, nondiscriminatory explanation.  *See Branson*, 853 F.2d at 772.

Moreover, Defendants assert additional legitimate, nondiscriminatory reasons for

their employment decisions.  Defendants indicate that they selected Ms. Timm over

Plaintiff because of Principal Ortner's recommendation, in which she observed that

Ms. Timm performed the job of secretary better than Plaintiff.  With respect to the

decision to hire Ms. Krueger, Defendants assert that they did not hire Plaintiff because

she did not interview as well as Ms. Krueger, nor did she have references comparable

to those received by Ms. Krueger.  Although Plaintiff makes various arguments, they all

relate to whether Defendants' submitted reasons are merely pretext.   Accordingly, the

Court finds that Defendants have offered legitimate, nondiscriminatory reasons for their

employment actions.

This shifts the burden back to Plaintiff to proffer evidence demonstrating that her

employer's reason is pretextual.  *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266,

1278 (10th Cir. 2005).  If a plaintiff "presents evidence that the defendant's proffered

reason for the employment decision was pretextual—*i.e.* unworthy of belief, the plaintiff

can withstand a summary judgment motion and is entitled to go to trial."  *Randle v. City

of Aurora,* 69 F.3d 441, 451 (10th Cir.1995); *see also Reeves v. Sanderson Plumbing

Prods., Inc.,* 530 U.S. 133, 148 (2000) ("a prima facie case and sufficient evidence to

reject the employer's explanation may permit a finding of liability" under the ADEA).

Significantly, "[t]he evidence which [a plaintiff] can present in an attempt to establish

that [a defendant's] stated reasons are pretextual may take a variety of forms. . . .

10

[A plaintiff] may not be forced to pursue any particular means of demonstrating that

[a defendant's] stated reasons are pretextual." *Patterson v. McLean Credit Union,* 491

U.S. 164, 187-88 (1989).  A showing of pretext may be based on "weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

claimed legitimate, non-discriminatory reason such that a rational trier of fact could find

the reason unworthy of belief." *Turner v. Pub. Serv. Co. of Colo.,* 563 F.3d 1136, 1143

(10th Cir. 2009) (quoting *Timmerman v. U.S. Bank, N.A.,* 483 F.3d 1106, 1113 (10th Cir.

2007)).[6]  As the Tenth Circuit observed in *Kendrick*:

> A plaintiff typically makes a showing of pretext in one of three ways:
> (1) with evidence that the defendant's stated reason for the adverse
> employment action was false; (2) with evidence that the defendant acted

---

[6] Plaintiff begins her response by stating, "Every secretary hired by Superintendent Miles and his principals has been under the age of 45," then she lists five women hired and their ages. (Doc. # 43 at 11.)  "It is uniformly recognized that statistical data showing an employer's pattern of conduct toward a protected class can create an inference that an employer discriminated against individual members of the class." *Fallis v. Kerr–McGee Corp.,* 944 F.2d 743, 746 (10th Cir. 1991).  However, "[s]tatistics taken in isolation are generally not probative of . . . discrimination," *Jones v. Unisys Corp.,* 54 F.3d 624, 632 (10th Cir. 1995), and statistical evidence on its own "will rarely suffice" to show pretext, *Ortiz v. Norton,* 254 F.3d 889, 897 (10th Cir. 2001).  "At the very least, in order to create an inference of pretext, a plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between **comparable** individuals." *Timmerman,* 483 F.3d at 1114-15 (emphasis in original).  It is unclear whether Plaintiff is bringing a disparate impact claim.  In the body of her response, Plaintiff argues only that two of the five women—Ms. Timm and Ms. Krueger—are comparable.  While Defendants concede that Ms. Timm is comparable, the Court disagrees that Ms. Krueger is, given her location in the elementary school. *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1404 (10th Cir. 1997) ("Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline.").  Nonetheless, and as discussed in more detail *infra,* the undisputed facts do not establish that Ms. Timm or Ms. Krueger engaged in similar conduct to Plaintiff. *See MacKenzie,* 414 F.3d at 1277 ("Individuals are considered "similarly-situated" when they (1) have dealt with the same supervisor; (2) were subjected to the same work standards; and (3) had engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.") (citations omitted).

contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.  A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.

220 F.3d at 1230.

    1.    <u>Elimination of Secretary of Junior/High School Building Position</u>

It is unclear whether Plaintiff brings a separate claim for the elimination of her position.  Nevertheless, Plaintiff has failed to present evidence that the decision to eliminate one of the secretarial positions was motivated by age discrimination.  She does not specifically deny that the district faced budgetary constraints.  Moreover, it is undisputed that the district eliminated a position in both the junior/high school and elementary school buildings. "The ADEA does not require employers to accord members of the protected class preferential treatment, but only that they treat age neutrally." *Branson*, 853 F.2d at 772 (citation omitted).  Because she has not demonstrated that Defendants' nondiscriminatory reason was merely pretext, this claim fails.

    2.    <u>Failure to Retain Plaintiff as Secretary of Junior/High School Building</u>

Regarding Defendants' failure to retain her as the remaining secretary in the Junior/High School Building, Plaintiff argues that "there are substantial factual disputes as to whether: (i) Ortner's written reprimand was warranted, or just another instance of discrimination; and (ii) whether [Plaintiff] had any performance problems."  (Doc. # 43

at 14.)  Plaintiff also argues that she was treated differently from Ms. Timm, who,

Plaintiff claims, was given various liberties not afforded to her.   These allegations fit into

the categories of false justification and treating similarly situated employees differently.

*See Kendrick*, 220 F.3d at 1230.

First, Plaintiff alleges that some of the bases in the written reprimand were not

warranted because the circumstances were out of her control.  However, a challenge of

pretext requires this Court to look at the facts as they appear to the person making the

decision to reprimand Plaintiff.  *See id.* at 1231 (citing *Shorter v. ICG Holdings,* 188 F.3d

1204, 1209 (10th Cir. 1999) (the manager's perception of the employee's performance,

not the employee's subjective evaluation of her performance, is relevant in determining

pretext); *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1129 (10th Cir. 1998)

(plaintiff failed to establish pretext where the defendant discharged plaintiff after

conducting an investigation into a subordinate employee's allegations of sexual

misconduct on the part of the plaintiff and believed the allegations to be true, even

though plaintiff presented evidence to the district court that the allegations may have

been false); *E.E.O.C. v. Flasher Co., Inc.,* 986 F.2d 1312, 1322 n. 12 (10th Cir. 1992)

("[A] mistaken belief can be a legitimate reason for an employment decision and is not

necessarily pretextual.")).  "A company must be allowed to exercise its judgment in

determining how severely it will discipline an employee for different types of conduct."

*Id.*  The Court's "role is to prevent unlawful hiring practices, not to act as a super

personnel department that second guesses employers' business judgments."  *Simms v.*

*Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321,

1330 (10th Cir. 1999) (quotations and citation omitted).  Thus, whether Plaintiff had an

explanation for the actions for which she was reprimanded, including her subjective

belief that the circumstances were out of her control,[7] is not sufficient to create a

genuine dispute of material fact.  *See Lobato v. New Mexico Envtl. Dept.*, 733 F.3d

1283, 1292 (10th Cir. 2013) (no material fact as to pretext where employee fails to

demonstrate employer's accusations of dishonesty were false and instead offers

excuses for his behavior).

Moreover, Principal Ortner was entitled to consider other's complaints regarding

Plaintiff's behavior in determining whether a reprimand was warranted.  *See id.* at 1293

(even assuming a dispute regarding whether plaintiff was rude, he failed to show pretext

because employer believed other employee's accounts of their interactions with

plaintiff).  Principal Ortner reprimanded Plaintiff because she refused to deal with

athletic paperwork, money, or questions, and instead, sent students and parents to

another building rather than assist them.   Principal Ortner instructed that she "expect[s]

our office to be service-minded and willing to go above and beyond to help people."

Plaintiff responds that Ms. Timm was paid additional compensation to deal with athletic

paperwork and that Plaintiff was reprimanded for not doing Ms. Timm's job.  However,

Plaintiff's subjective belief that she acted appropriately is not enough to create a

genuine issue of material fact.  *See id.*

---

[7] Plaintiff alleges that Principal Ortner recognized that Plaintiff's failure to record her time was because the school's computer person had not installed the necessary software on her computer.  (Doc. # 43 at 9, 15.)  However, Principal Ortner acknowledged as much in the reprimand itself.  (Doc. # 38-13 at 2.)  Therefore, this does not create a disputed fact that calls into question the legitimacy of the reprimand.

14

The Court will not second guess Principal Ortner's decision not to engage in less formal or progressive discipline prior to the written reprimand. *Timmerman*, 483 F.3d at 1121 ("the fact that [Plaintiff] only received a written warning is of no relevance"). Plaintiff has made no showing that the school or district had a progressive discipline policy. *Lobato*, 733 F.3d at 1289 ("For this argument to proceed, [plaintiff] must show, first, that [defendant] had such a policy, and second, that [defendant] did not follow that policy . . . ."). Furthermore, Plaintiff mistakenly asserts that "Ortner could not provide any explanation whatsoever for her failure to address purported performance problems for over a year." (Doc. # 43 at 16.) This allegation presents two problems. First, Plaintiff fails to point the Court to specific portions of the record that supports this allegation. Second, Plaintiff's belief that Principal Ortner waited for a year to issue the reprimand appears to be based on the mistaken belief that it was written in August of 2011, rather than 2010. As discussed *supra*, the letter was written and given to Plaintiff in August of 2010. Accordingly, this purported issue of temporal proximity is erroneous.

Next, Plaintiff alleges that Ms. Timm engaged in similar behavior without receiving a reprimand.[8] "A plaintiff may also show pretext on a theory of disparate treatment by providing evidence that she was treated differently from other similarly-situated, nonprotected employees who violated work rules of comparable seriousness."

---

[8] Plaintiff has offered her own contemporaneous notes as evidence of Ms. Timm's behavior, which Defendants object to as inadmissible hearsay. Although the Court agrees that these notes would not be admissible at trial, *see Adams*, 233 F.3d at 1246, at this stage, the Court looks to whether "the content or substance of the evidence [is] admissible." *Thomas*, 48 F.3d at 485. The Court assumes Plaintiff would testify as to her observations and at this juncture, she merely uses her notes as an indication of that testimony. However, even considering the substance of those notes, it is not sufficient to overcome summary judgment.

*Kendrick*, 220 F.3d at 1232.  Defendant concedes that Ms. Timm was similarly situated to Plaintiff.  However, Plaintiff has not established that Ms. Timm violated work rules of comparable seriousness.  Plaintiff has offered evidence, by way of her own observations, that Ms. Timm was allowed to work part-time during the summer, not attend work meetings, come in late, leave early, and take lunch at her leisure or not at all.  Yet, Plaintiff has failed to demonstrate that Ms. Timm deleted files from a company computer, refused to be "service-minded" and helpful, or requested and took a month off of work without fair notice, all of which formed the basis of Plaintiff's reprimand.  Because Plaintiff's actions constituted violations of greater severity, her allegations that Ms. Timm also violated work policies are insufficient to preclude summary judgment.  *See Kendrick*, 220 F.3d at 1233 (the fact that other employees may have engaged in some similar, but not all actions does not establish pretext).

Plaintiff claims that she was "far and away the most qualified candidate" for the position ultimately given to Ms. Timm.[9]  (Doc. # 43 at 13-14.)  However, Plaintiff's subjective assessment of her own qualifications is insufficient to support a finding of pretext.  *See Branson*, 853 F.2d at 772.  Courts are not free to second-guess an employer's business judgment.  *Id.*   And, "[i]t is the perception of the decision maker which is relevant, not Plaintiff's perception of herself."  *Id*.

Last, the Court will briefly address Plaintiff's contentions that Principal Ortner disciplined Plaintiff and gave her a poor performance review at the behest of

---

[9] Plaintiff makes a similar allegation regarding Ms. Krueger, which the Court also rejects.

Superintendent Miles.[10]  To substantiate this theory, Plaintiff claims that Superintendent Miles previously considered replacing Principal Ortner, that Ortner consulted Miles prior to giving Plaintiff her written remand, and that Miles had the power to retain or dismiss Ortner.  (Doc. # 43 at 16.)  "To avoid summary judgment, a party must produce **specific** facts showing that there remains a genuine issue for trial and evidence significantly probative as to any material fact claimed to be disputed."  *Branson*, 853 F.2d at 771-72 (citations and internal brackets and quotation marks omitted, emphasis in original).  Thus, Plaintiff's "mere conjecture" that Principal Ortner acted as a conduit for Superintendent Miles's bias is an insufficient basis for denial of summary judgment.  *See id.*  This is particularly so when Plaintiff has failed to dispute her more egregious allegations of misconduct, including that she deleted school files.

     3.    <u>Failure to Hire Plaintiff as Administrative Assistant to the Superintendent</u>

Plaintiff also claims that there are disputed material facts that show Defendants' claimed reasons for hiring Ms. Krueger as administrative assistant were pretextual.

Plaintiff takes issue with Superintendent Miles's use of references when selecting a candidate for this position.  She alleges that she was given only a few hours to obtain references, whereas Ms. Krueger was given several days, and that Superintendent Miles requested references of the candidates of his choosing.  (Doc. # 43 at 17.)

---

[10] This theory appears to be the inverse of what courts refer to as subordinate bias liability or rubber stamp or cat's paw theory, which "refer[] to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action."  *E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484 (10th Cir. 2006)

An objective look at the references demonstrates that the references were not comparable.  All five of Ms. Krueger's references gave her an overall rating of "above average" and stated they would hire her "without reservation."  (Doc. # 39-2.) Conversely, all five of Plaintiff's references, including those from persons she selected, gave her an overall rating of "average" and stated they would not hire her, or would hire her "with reservation."  (Doc. # 39-3.)  Again, the Court will not "act as a super personnel department that second guesses employers' business judgments." *Simms,* 165 F.3d at 1330; *see also Lobato*, 733 F.3d at 1293 (where plaintiff provides no good-faith reason to reject them, employer may rely on employee's complaints).  Indeed, "[u]nless the disparity in employees' qualifications are obvious, we judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question." *Mackenzie*, 414 F.3d at 1278 (10th Cir. 2005) (citation and internal quotation marks omitted).  Plaintiff's speculation that her lack of time resulted in negative references is insufficient to establish pretext.

Curiously, Plaintiff contends, "The most damming aspect of the reference check documents was that they were sent out after a decision as to who would be the administrative assistant was already made."  (Doc. # 43 at 17.)  As evidence, Plaintiff points to a statement by one of Mr. Krueger's references that she is "very sad to see [Ms. Krueger] go, she has been a joy to work with."  (Doc. # 39-2.)  Plaintiff's allegation that this evidences that the references were a post-hoc justification for the employment decision will not suffice.  More likely, the reference's statement referred to Mr. Krueger's

departure from the elementary school so that her sister could remain as secretary.

Plaintiff further supports this supposed scheme by stating, "Krueger . . . testified that

people were congratulating her even before references were requested." (Doc. # 43

at 17.) The deposition testimony to which Plaintiff cites not only does not support this

interpretation, but more importantly, it demonstrates that, in an effort to avoid the

granting of summary judgment, Plaintiff has intentionally distorted the evidence.

That testimony is as follows:

> Counsel:   Do you remember saying [during the interview] that
>            you had gotten great compliments from staff since the
>            announcement?
>
> Krueger:   Yes.
>
> Counsel:   And what was the announcement?
>
> Krueger:   That -- just my working with the staff; that I was leaving
>            the elementary; and I got emails from numerous staff, you
>            know, saying how we worked together and that they loved
>            working with me and best of luck and going to miss me and
>            that type of emails from staff.

(Doc. # 47-1 at 5-6.) Accordingly, Plaintiff has not demonstrated that a disputed issue

of material fact exists.

Plaintiff argues that Defendants' explanation that Ms. Krueger answered

questions better than Plaintiff improperly relies on subjective standards, which

demonstrates pretext. In the context of a Title VII claim, the Tenth Circuit has observed:

> [T]he use of subjective factors supports an inference of pretext when an
> employer justifies rejection of a minority candidate on the basis of such
> factors even though the minority is objectively better qualified than the
> non-minority chosen. The use of such subjective criteria as "dedication"
> and "enthusiasm" also may offer a convenient pretext for giving force

> and effect to racial prejudice, and can create a strong inference of discrimination if there is a showing of significant disparity in the representation of a particular group.

*Mohammed v. Callaway*, 698 F.2d 395, 401 (10th Cir. 1983) (internal citations and quotation marks omitted). However, Plaintiff's perception that she was more qualified than Ms. Krueger does not create a material factual dispute. *Green v. JP Morgan Chase Bank Nat. Ass'n*, 501 F. App'x 727, 733 (10th Cir. 2012). In *Green*, the Tenth Circuit distinguished *Mohammed*, upon which Plaintiff relies. The court explained:

> The relative parity between the candidates distinguishes this case from *Mohammed* . . . . In *Mohammed,* an unqualified candidate was hired over a qualified minority candidate. But where neither candidate is clearly better qualified, it is within the employer's discretion to choose among them so long as the decision is not based on unlawful criteria.

*Green*, 501 F. App'x at 733 (internal citations and quotation marks omitted); *see also Jaramillo v. Colo. Judicial Dep't,* 427 F.3d 1303, 1309 (10th Cir. 2005) (no showing of pretext where plaintiff conceded that employer could have a good-faith belief that successful candidate was at least as well qualified as plaintiff). While Plaintiff argues that she was more qualified because she had many more years of experience as a secretary, this does not take into account other attributes that make one candidate more qualified than another. Moreover, despite Ms. Krueger having only three years of experience at the time she was hired, Plaintiff makes no showing that Ms. Krueger was not qualified. Accordingly, this case is distinguishable from *Mohammed*, and Plaintiff has not demonstrated that Defendants' legitimate, nondiscriminatory reasons for hiring Ms. Krueger are pretext.

**B.     RETALIATION**

Plaintiff alleges that she was retaliated against following her complaints of age

discrimination when Defendants failed to retain her for the secretary position.  In order

to establish a prima facie case of retaliation, an employee must show that: "(1) she

engaged in protected activity, (2) she suffered an adverse employment action, and

(3) there was a causal connection between the protected activity and the adverse

action."  *Duncan v. Mgr., Dep't of Safety,* 397 F.3d 1300, 1314 (10th Cir. 2005).  Similar

to a discrimination claim, once the employee establishes a prima facie case of

retaliation, the burden of production shifts to the employer to articulate a legitimate,

nondiscriminatory reason for the adverse employment action.  *O'Neal v. Ferguson*

*Constr. Co.,* 237 F.3d 1248, 1252 (10th Cir. 2001).  If such a reason is successfully

articulated, the employee must then demonstrate that the employer's proffered reason

for the adverse action is pretextual.  *Id.*

Plaintiff alleges that she "was told she did not get the open jobs on May 24, 2011,

and was terminated on May 27, less than a month after filing the formal complaint of

discrimination (May 5, 2011). . . ."[11]  (Doc. # 43 at 19.)  Even assuming Plaintiff has

established causation due to the close temporal proximity between her complaint and

the failure to retain her, Plaintiff has not demonstrated pretext.  *See Metzler v. Fed.*

---

[11] Plaintiff also alleges, "A further act of retaliation occurred in December . . . 2011[, when she] applied for [the position Ms. Timm vacated." (Doc. # 43 at 19.)  However, in submissions to this Court, she clarified that this is background information rather than a standalone claim. Moreover, she failed to include this as a separate claim in the Final Pretrial Order.  *Wilson*, 303 F.3d at 1215 ("claims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint").

*Home Loan Bank of Topeka*, 464 F.3d 1164, 1172 (10th Cir. 2006); *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1241 (10th Cir. 2004).  To demonstrate pretext, Plaintiff must "present evidence of temporal proximity **plus** circumstantial evidence of retaliatory motive."  *Metzler*, 464 F.3d at 1172 (emphasis in original).  Plaintiff points to a bulletin that she alleges shows that her "termination was discussed in the same [school] board meeting as a discussion about the second letter from [Plaintiff's] attorney about discrimination."  (Doc. # 34 at 10.)  However, those items appear under the section entitled "Administrative Issues/FYI" and Plaintiff points this Court to no evidence demonstrating that these issues were, in fact, discussed at the board meeting, as she alleges.  See *Bones v. Honeywell Int'l, Inc.*, 366 F .3d 869, 875 (10th Cir. 2004) (conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence).  Without more, the Court is asked to rely exclusively on the temporal proximity of Plaintiff's complaints, which it cannot do.  *See Metzler*, 464 F.3d at 1172.  Moreover, having already determined that Plaintiff failed to establish that Defendants' nondiscriminatory reasons for hiring Ms. Timm were merely a pretext, the Court also finds that Plaintiff has not established pretext with regard to her retaliation claim.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, it is ORDERED that Defendants' Motion for Summary Judgment (Doc. # 38) is GRANTED.  Accordingly, this case is DISMISSED WITH PREJUDICE, and the Clerk of the Court shall enter judgment in favor of Defendants

and against Plaintiff.  Pursuant to D.C.Colo.LCivR 54.1, Defendants may thereafter have their costs by filing a bill of costs within 14 days of the date of that order.  It is

     FURTHER ORDERED that the final trial preparation conference, currently scheduled for June 20, 2014, and the five-day jury trial, set to begin on July 7, 2014, are VACATED.

     DATED:  June __09__, 2014

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge